UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X   For Online Publication Only
EMILY STERN,

                              Plaintiff,         **MEMORANDUM AND ORDER**
                                                          14–CV–1379 (JMA) (AKT)
        -against-

RAICH ENDE MALTER & CO., LLP,

                              Defendant.
----------------------------------------------------------------X

**AZRACK, United States District Judge:**

      Defendant Raich Ende Malter & Co., LLP moves for summary judgment on plaintiff Emily Stern's claims for violations of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et. seq., and New York Executive Law § 296 ("NYSHRL"). Plaintiff premises both claims on a theory that defendant regarded her as disabled within the meaning of the ADA and the NYSHRL after she suffered a significant seizure. Defendant argues that plaintiff's impairment lasted less than six months and was minor, and, thus, was outside the scope of the ADA and the NYSHRL. For the reasons set forth below, defendant's motion is denied.

                                      **I.     FACTS**

      The following facts are drawn from the parties' Local Rule 56.1 Statements, and the declarations and exhibits referenced therein. These facts are undisputed unless otherwise noted.

      Defendant is an accounting firm with offices in East Meadow and Manhattan. (Def.'s 56.1 ¶¶ 6, 35, ECF No. 26.) In January 2011, plaintiff, who lived in Howard Beach, began working as a staff accountant at defendant's East Meadow office. (Id. ¶¶ 7–8.) During her brief tenure with defendant, plaintiff visited client work sites approximately a dozen times. (Pl.'s 56.1 of Add'l Facts ¶ 1, ECF No. 28-1.) On half of these occasions, plaintiff was driven by a colleague to the client work site. (Id.) Defendant concedes that there is factual dispute as to

whether an essential function of plaintiff's job was the ability to drive herself to defendant's East Meadow office or client sites. (Def.'s Mem. of Law at 18, ECF No. 26-1.)

On March 10, 2011, plaintiff suffered a seizure while at home. (Def.'s 56.1 ¶ 15; Compl. ¶ 15, Decl. of Keith J. Frank ("Frank Decl."), Ex. A, ECF No. 25.) When she returned to work on March 16, 2011, plaintiff presented Barbara Weisbein, defendant's human resources director, with a doctor's letter stating that plaintiff had been admitted to Jamaica Hospital Medical Center from March 10, 2011 to March 11, 2011. (Def.'s 56.1 ¶¶ 6, 16.) Plaintiff also gave Weisbein a letter from a neurologist, Dr. Nandakumar, stating that plaintiff was under his care for a neurological issue and asking that plaintiff be excused from work on March 10, 2011 and March 11, 2011. (Id. ¶ 17; Mar. 14, 2011 Ltr., Frank Decl., Ex. L.) Dr. Nandakumar also indicated that plaintiff would need additional days off for an MRI and doctor's visits. (Mar. 14, 2011 Ltr.) Weisbein then directed plaintiff to provide defendant with a doctor's note clearing plaintiff to return to work. (Def.'s 56.1 ¶ 18.)

In the ensuing weeks, plaintiff underwent an MRI. (Id. ¶ 19). On March 29, 2011, Dr. Nandakumar informed her that the results of the MRI were negative. (Id. ¶ 20.) At that time, he did not diagnose plaintiff with a specific medical condition. (Id. ¶ 21.) However, Dr. Nandakumar explained to plaintiff that, under New York law, she could not drive for a year because she had suffered a seizure.[1] (Emily Stern Dep. ("Stern Dep.") Tr. 37:23-38:2, Frank Decl., Ex. E.) That same day, Dr. Nandakumar also wrote a letter addressed to Weisbein stating that plaintiff was "clear for full duty as of 4/11/11, except driving or operating machinery."

---

[1] In her response to defendant's Local Rule 56.1 Statement, plaintiff states that Dr. Nandakumar determined that she could not drive for a year "based on his examination of her and understanding of her medical history." (Pl.'s Resp. to Def's 56.1 ¶ 21, ECF No. 28-1.) However, the testimony to which plaintiff cites indicates that Dr. Nandakumar based his determination on the application of New York law to the fact that plaintiff had suffered a seizure.

(Def.'s 56.1 ¶ 22.)  Dr. Nandakumar's letter did not state when plaintiff could resume driving or operating heavy machinery.  (Mar. 29, 2011 Ltr., Frank Decl., Ex. M.)

Later that day, plaintiff faxed Dr. Nandakumar's March 29, 2011 letter to Weisbein.  (Id.; Stern Dep. 37:6-39:12.)  Plaintiff then called Weisbein to follow up.  (Stern Dep. 39:13-21.)  The parties appear to agree that during this conversation, plaintiff disclosed to Weisbein that Dr. Nandakumar had informed her that she could not drive for a year under New York law.  (Stern Dep. 39:13-40:4.)  The parties generally dispute the rest of that conversation.

Plaintiff maintains that she told Weisbein that she was looking forward to returning to work and assured Weisbein that, notwithstanding her yearlong driving restriction, she would do anything necessary to keep her job, including taking public transportation, getting a ride from someone or working at one of defendant's Manhattan offices.  (Pl.'s 56.1 of Add'l Facts ¶ 3.)

According to Weisbein, however, plaintiff told her that she could not report to the East Meadow office for work.  (Def.'s 56.1 ¶ 35.)  Weisbein maintains that plaintiff said that she could not get to the East Meadow office because her father could not drive her there every day and because there was no workable public transportation alternative.  (Def.'s 56.1 ¶¶ 33–34.)  Weisbein also recalls plaintiff requesting a transfer to defendant's Manhattan office on Broadway because it was accessible by public transportation.  (Def.'s 56.1 ¶ 35.)

Neither party disputes that Weisbein agreed to discuss a transfer with defendant's partners.

It is unclear whether, during that phone call, plaintiff disclosed to Weisbein that the results of the MRI were negative or that Dr. Nandakumar had not diagnosed her with a specific medical condition.

Following that conversation, Weisbein asked Neil Kilbane, a managing partner of defendant's Broadway office, about plaintiff's request to work at that office. (Def.'s 56.1 ¶ 36.) According to Weisbein's notes of the conversation, Kilbane told her that the location was already short on seating because a number of employees from defendant's Fifth Avenue office had moved to defendant's Broadway location.[2] (Weisbein's Notes, Frank Decl. Ex. R; Barbara Weisbein Dep. Tr. ("Weisbein Dep.") 166:25–167:19.)

A few days later, plaintiff and Weisbein had another conversation by phone.[3] The parties dispute the substance of that conversation. According to plaintiff, Weisbein informed her (apparently without explanation) that her employment with defendant had been terminated effective March 31, 2011. (Pl.'s 56.1 of Add'l Facts ¶ 7; Stern Dep. 49:7-50:25.) Weisbein, on the other hand, maintains that she and plaintiff mutually agreed that plaintiff's employment would end as of March 31, 2011.[4] (Def.'s 56.1 ¶ 39.) Whatever the substance of the conversation, plaintiff was no longer employed by defendant as of March 31, 2011.

At some point after this conversation, plaintiff learned that, contrary to Dr. Nandakumar's explanation, New York law only prohibited her from driving for six months and

---

[2] Plaintiff disputes that Kilbane told Weisbein that there were too many people working at the Broadway office because the deposition testimony cited to support that fact "says nothing about whether there was room for Plaintiff at Defendant's Broadway office." (Pl.'s Resp. to Def.'s 56.1 ¶ 37.) According to plaintiff, "the Broadway office was one of Defendant's largest locations and Plaintiff was fired in the middle of tax season, [Defendant's] busiest time." (Id.) However, the testimony from Weisbein cited by defendant clearly references Weisbein's notes of her conversation with Kilbane. Moreover, a particular location's size and business does not necessarily mean that that location could physically accommodate another employee.

[3] According to plaintiff, the conversation took place on April 4, 2011. (Pl.'s 56.1 of Add'l Facts ¶¶ 6–7.) However, Weisbein recalls the conversation taking place between March 29, 2011 and March 31, 2011. (Def.'s 56.1 ¶ 39.)

[4] To substantiate the mutuality of plaintiff's separation, defendant points to plaintiff's "cordial and friendly" e-mails to Weisbein after this conversation. (Def.'s 56.1 ¶¶ 40-41.) Defendant also notes that plaintiff did not complain about the circumstances of her separation in that correspondence. (Id. ¶ 41.)

4

that her doctor could complete a form authorizing her to drive soon than that.[5] (See Compl. ¶ 24 n. 1, Frank Decl., Ex. A.) However, at the time of plaintiff's separation, defendant does not appear to have known that plaintiff might be able to drive within six months. (See Def.'s Submission to the N.Y. Dep't of Labor, Decl. of Bruce E. Menken, Ex. A, ECF No. 28.) Furthermore, plaintiff's subsequent neurologist, Dr. Singh, told plaintiff that "it was safe to assume what [Dr. Nandakumar] said" about starting to drive again. (Stern Dep. 103:25-105:14.)

## II.   SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

"An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When determining whether any material facts are in dispute, the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.]" Marvel Characters, 310 F.3d at 286 (citations omitted).

---

[5] Neither party has cited the specific New York law that prohibits individuals who have suffered a seizure from driving for six months. The Court, however, notes that, under the Department of Motor Vehicles regulations, an individual who has suffered a loss of consciousness within the preceding 12 months may not be able to maintain, renew or obtain a license unless, among other things, a doctor clears the individual to drive. N.Y. Comp. Codes R. & Regs. tit. 15, § 9.3.

To defeat a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. See Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003) (citation omitted).

## III.  DISCUSSION

Plaintiff contends that defendant discriminated against her based on a perceived disability, in violation of the ADA and the NYSHRL. Defendant contends that it is entitled to summary judgment because: (1) plaintiff did not suffer any adverse employment action; (2) plaintiff's actual or perceived impairment was transitory and minor; (3) perceived disability claims are not cognizable under the NYSHRL; and (4) even if they were, the Court should decline supplemental jurisdiction over that claim because plaintiff's ADA claim fails. For the reasons set forth herein, the Court rejects these arguments.

**A.  Adverse Action**

To establish a claim under either the ADA or the NYSHRL, an employee must demonstrate, among other things, that the employer took an adverse action against the employee because of the employee's disability. See Kinneary v. City of New York, 601 F.3d 151, 155–56, 158 (2d Cir. 2010). An adverse action is "a materially adverse change in the terms and conditions of employment," such as termination of employment. Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks omitted).

There is a genuine issue of material fact as to whether plaintiff suffered an adverse employment action. Plaintiff claims that Weisbein told her—without any explanation—that

6

defendant had terminated her employment effective March 31, 2011. Defendant, on the other hand, claims that plaintiff voluntarily agreed to separate from her employment with defendant. As further evidence of her voluntary separation, defendant points to plaintiff's cordial and friendly tone in subsequent communications and her failure to protest the circumstances under which her employment ended. These competing versions of what happened present a factual question for the jury. Therefore, defendant's motion for summary judgment on this basis is denied.

## B. Plaintiff's "Regarded As" Claim and the "Transitory and Minor" Defense

### 1. The ADA and the EEOC's Implementing Regulations

To establish a violation under the ADA, an employee must establish, inter alia, that the employee was disabled within the meaning of the ADA. See McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013). Plaintiff asserts that defendant regarded her as disabled because her doctor told her that she could not drive for a year. Defendant denies this, arguing that plaintiff's actual or perceived disability was transitory and minor. See 42 U.S.C. § 12102(3)(B).

The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1) (emphasis added). Under paragraph (3), an employer regards an employee as disabled if the employee "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or

7

is perceived to limit a major life activity."[6] 42 U.S.C. § 12102(3)(A). The Court must construe the ADA's definition of disability "in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of [the ADA]." 42 U.S.C. § 12102(4)(A).

However, the "regarded as" definition of disability "shall not apply to impairments that are 'transitory and minor'" (hereinafter "the transitory and minor defense").[7] 42 U.S.C. § 12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." Id. Neither the ADA nor the EEOC's regulations define "minor." The purpose of this defense is to prevent individuals from invoking the ADA's protections for minor, short-term ailments, such as the flu or a common cold. H.R. REP. 110-730(II), at 18 (2008). "[A]s an exception to the general rule for broad coverage under the 'regarded as' prong, this limitation on coverage should be construed narrowly." 29 C.F.R. § Pt. 1630, App. (citing 2008 House Judiciary Comm. Rep., H.R. REP. 110-730(II), at 18 (2008)).

To establish the transitory and minor defense, an employer "must demonstrate that the impairment is both 'transitory and minor.'" 29 C.F.R. § 1630.15(f). The EEOC's regulations state that "[w]hether the impairment at issue is or would be 'transitory and minor' is to be determined objectively." Id. According to these regulations, an employer "may not defeat 'regarded as' coverage of an individual simply by demonstrating that it subjectively believed the

---

[6] A "physical impairment" is:
> Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h).

[7] According to the Equal Employment Opportunity Commission ("EEOC"), which Congress tasked with issuing regulations "implementing the definitions of disability in section 12102," 42 U.S.C. § 12205a, whether an impairment is transitory and minor is a defense that must be proved by the employer. 29 C.F.R. § 1630.15(f). This regulation is entitled to great deference. See Muller v. Costello, 187 F.3d 298, 312 (2d Cir. 1999) ("Under the law of this Circuit, the EEOC's regulations are entitled to 'great deference' in interpreting the ADA.").

impairment was transitory and minor; rather, the [employer] must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor." Id.  In other words, "[t]he relevant inquiry is whether the actual or perceived impairment on which the employer's action was based is objectively 'transitory and minor,' not whether the employer claims it subjectively believed the impairment was transitory and minor." 29 C.F.R. § Pt. 1630, App.

### 2. Defendant's Arguments

Defendant advances three arguments as to why it is entitled to summary judgment on plaintiff's "regarded as" claim.  First, defendant asserts that "[w]here a plaintiff suffers from an actual impairment lasting less than six months, he is barred from bringing a 'regarded as' disability claim, despite how the employer perceived the impairment." (Def.'s Reply at 2, ECF No. 29-1.)  Second, defendant asserts that the objective analysis under 29 C.F.R. § 1630.15(f) encompasses any objective information that should have or could have been known about a perceived impairment at the time of an adverse action even if such evidence was not before the employer at the time of the adverse action.  Third, defendant argues that a single, isolated seizure is an objectively minor impairment.

As explained below, defendant's first two arguments are not persuasive and a genuine issue of material facts exists as to whether plaintiff's perceived impairment was transitory.  Given that conclusion, the Court does not reach whether plaintiff's perceived impairment was minor.

### 3. An Actual Impairment that is Transitory and Minor Does Not Categorically Bar an Employee from Asserting a Claim Based on a Perceived Impairment

Defendant argues that plaintiff cannot assert a "regarded as" claim based on a perceived impairment because her actual impairment lasted only a month and was thus transitory and

9

minor. Plaintiff contends that her actual impairment is irrelevant because she bases her claim on a perceived impairment. Specifically, plaintiff asserts that defendant regarded her as disabled based on Dr. Nandakumar's instructions that plaintiff could not drive for a year.[8]

Courts appear to have reached different conclusions as to whether an actual impairment that is transitory and minor bars an employee from bringing a claim based on a perceived impairment. Compare Nevitt v. U.S. Steel Corp., 18 F. Supp. 3d 1322, 1328-32 (N.D. Ala. 2014) (holding that employer perceived prospective employee as suffering from a non-transitory impairment where, although employee reported that an injury sustained more than six months earlier had completely resolved itself, employer's doctor placed significant restrictions on employee's ability to perform job duties due to that injury); Davis v. Vermont Dep't of Corr., 868 F. Supp. 2d 313, 327 (D. Vt. 2012) (refusing to dismiss "regarded as" claim where the allegations of the complaint "suggest[ed] that the perceived impairment, if not the actual impairment, lasted longer than six months") with White v. Interstate Distrib. Co., 438 F. App'x 415, 420 (6th Cir. 2011) (holding that "no matter what [the employee] may be able to prove about how [the employer] perceived his physical condition," employee could not establish a "regarded as" claim because, at the time employee was terminated, the employee was only out of work for a few months and his doctor expected any work restrictions to be in effect for only one to two additional months). In Nevitt, the court concluded that it was inconsistent with the ADA, its amendments and the EEOC's regulations and guidance to hold that an employer's "perception of an impairment [is] irrelevant if an actual impairment gave rise to the perception . . . ." 18 F. Supp. 3d at 1331. The Court agrees with that reasoning.

---

[8] Plaintiff does not concede that her actual or perceived impairment was minor. However, for purposes of addressing this particular contention, the Court assumes without deciding that plaintiff's actual impairment was transitory and minor.

10

The plain language of the ADA permits an employee to assert a "regarded as" claim based on "an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A). This is consistent with the purpose of "regarded as" liability. Liability for "regarded as" claims "recognizes that perceptions about disabilities carry stigma enough and that, when these perceptions are the motivating force in an employment decision, they often become agents of the improper biases and prejudices associated with the disability (real or imagined) in question." Darcy v. City of New York, No. 06–CV–2246, 2011 WL 841375, at *4 (E.D.N.Y. Mar. 8, 2011) (holding that no actual impairment was necessary to bring a "regarded as" claim); see 154 Cong. Rec. S8840-01 (2008) (Senate Statement of the Managers to Accompany S. 3406, the Americans with Disabilities Act Amendments Act of 2008). To better combat this form of discrimination, in 2008, Congress passed the ADA Amendments Act of 2008 ("ADAAA"), which, among other things, eased the burden of proof for "regarded as" claims. It did this by removing the judicially-created requirement that an employee asserting such a claim demonstrate that the employer regarded the employee as being substantially limited in one or more major life activities. See 42 U.S.C. § 12102(3)(A); Darcy, 2011 WL 841375, at *4 n.2. The ADAAA thus broadened "regarded as" disabilities, tempering their broad coverage only with the transitory and minor defense.

Defendant's insistence that plaintiff's actual impairment bars her from asserting a "regarded as" claim contradicts the plain language of the statute. Additionally, nothing in the EEOC's regulations categorically forecloses an employee with an actual impairment that is transitory and minor from asserting a "regarded as" claim based on a perceived impairment. Indeed, as the Nevitt court noted, "it is often the case that an actual impairment, insignificant though it may be, gives rise to a perceived impairment." Nevitt, 18 F. Supp. 3d at 1328.

11

Admittedly, the transitory and minor defense creates some confusion because the statute does not clearly explain how the defense applies where an employee has a minor, short-term impairment that gives rise to a perceived impairment that is objectively long-term or non-minor. However, as the EEOC's regulations indicate, in that case, the relevant analysis focuses on whether the perceived impairment is objectively the type of impairment that: (1) has an actual or expected duration of six months or less; and (2) is non-minor. See 29 C.F.R. § 1630.15(f) (explaining that to establish that a perceived impairment is transitory, an employer "must demonstrate that the impairment . . . would be . . . both transitory and minor"); 29 C.F.R. Pt. 1630, App. ("The relevant inquiry is whether the actual or perceived impairment on which the employer's action was based is objectively 'transitory and minor,' not whether the employer claims it subjectively believed the impairment was transitory and minor."). For example:

> [A]n employer that terminated an employee with an objectively "transitory and minor" hand wound, mistakenly believing it to be symptomatic of HIV infection, will nevertheless have "regarded" the employee as an individual with a disability, since the covered entity took a prohibited employment action based on a perceived impairment (HIV infection) that is not "transitory and minor."

29 C.F.R. § Pt. 1630, App.

Defendant has not pointed to any statutory language or legislative history to support its position. Rather, defendant relies on several cases (mostly from courts outside the Second Circuit) indicating that an employee cannot assert a "regarded as" claim based on a perceived impairment when the employee's actual impairment is transitory and minor. See, e.g., White, 438 F. App'x 415; Dugay v. Complete Skycap Servs., Inc., No. 10–CV–2404, 2011 WL 3159171 (D. Ariz. July 26, 2011). Those cases are inapposite. First, to the extent those courts determined that a transitory and minor impairment categorically precludes a plaintiff from asserting a "regarded as" claim based on a perceived impairment, those courts did not explicitly

12

spell out the rationale for that conclusion. Second, factually, those cases concerned employees who were fully cleared or expected to be fully cleared to return to work within six months of their respective injuries. Consequently, there was no basis for the employees to assert that the employers perceived the employees as suffering from anything other than short-term, minor impairments. Here, in contrast, plaintiff received a conditional clearance to return to work. This distinction is critical because, based on her doctor's explanation that she could not drive for a year, a jury could reasonably infer that defendant regarded plaintiff as having an ongoing impairment.

For the foregoing reasons, the Court concludes that a transitory and minor impairment does not necessarily preclude an employee from asserting a "regarded as" claim based on a perceived impairment.[9]

### 4. Limitations on Objective Evidence of a Perceived Impairment

Because the parties do not dispute it, the Court assumes that, although Dr. Nandakumar told plaintiff she could not drive for a year under New York law, she was actually prohibited from driving for only six months. (But see supra note 5.) However, the parties disagree over the relevance of Dr. Nandakumar's mistake of law to the defendant's transitory and minor defense. Specifically, they dispute whether objective evidence about the nature and expected duration of a perceived impairment is limited to evidence presented to an employer at the time of an adverse action. See 29 C.F.R. § 1630.15(f).

Defendant implicitly argues the objective analysis under 29 C.F.R. § 1630.15(f) encompasses any objective evidence about an impairment, regardless of whether the employer

---

[9] Defendant also argues that, viewing the evidence in light most favorable to plaintiff, plaintiff's insistence that she was fully able to return to work and willing to work around her driving restriction precludes her from asserting a "regarded as" claim based on a perceived impairment. The Court disagrees. A jury could credit plaintiff's testimony that she told Weisbein that she was ready and willing to return work but nonetheless find that defendant regarded plaintiff as having an impairment based on her inability to drive for an extended period of time.

13

knew about that evidence at the time of the alleged adverse action. Thus, according to defendant, irrespective of what Dr. Nandakumar told plaintiff (and what plaintiff relayed to Weisbein), any perceived impairment was transitory because plaintiff was objectively prohibited from driving for only six months under New York law.

Plaintiff, however, contends that objective evidence is limited to objective evidence presented to defendant at the time of plaintiff's alleged termination. In plaintiff's view, her perceived impairment was not transitory because, at the time of her alleged termination, the objective evidence from Dr. Nandakumar indicated that plaintiff's perceived impairment would last at least a year.

The text of the ADA does not explicitly address this issue. The statute provides only that "regarded as" claims do not include claims premised on "impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). The statute defines "transitory impairment" as "an impairment with an actual or expected duration of 6 months or less." Id.

The EEOC's regulations also do not address this precise issue. They provide only that "[w]hether the impairment at issue is or would be 'transitory and minor' is to be determined objectively." 29 C.F.R. § 1630.15(f). This objective evidence requirement serves to "close a loophole that, if left unchecked, would make it virtually impossible for a plaintiff mounting a 'regarded as' claim to rebut a 'transitory and minor' defense because a defendant could raise the defense based entirely on its own supposed perception." Nevitt, 18 F. Supp. 3d at 1331.

Since neither the statute nor the EEOC's regulations address the exact issue presented, the Court looks to the principle that the transitory and minor defense must be construed narrowly. 29 C.F.R. § Pt. 1630, App. (citing 2008 House Judiciary Comm. Rep., H.R. REP. 110-730(II), at 18 (2008)). Additionally, the Court notes that defendant's interpretation does not

14

further the rationale for the objective evidence requirement, i.e., to keep employers from thwarting legitimate "regarded as" claims with the employers' subjective beliefs that a perceived impairment is transitory and minor. Both of these considerations persuade the Court that objective evidence under 29 C.F.R. § 1630.15(f) should include information conveyed by a medical professional before an adverse action, regardless of whether such information was accurate.

The only case defendant cites that arguably supports its position is Valdez v. Minn. Quarries, Inc., No. 12–CV–0801, 2012 WL 6112846 (D. Minn. Dec. 10, 2012). Valdez addressed a specific legal question not at issue here, namely, "whether someone who is regarded as having an impairment that in fact is no more serious than seasonal flu—but that, for a period of time, is widely (although mistakenly) perceived as being far more dangerous—is "disabled" for purposes of the ADA." Id. at *1 (emphasis in original). There, the defendant terminated the plaintiff because, inter alia, the defendant feared that the plaintiff had contracted swine flu while traveling abroad. Id. At the time the plaintiff was fired, medical authorities, despite not knowing much about swine flu, "feared the worst." Id. at *3. By the time of summary judgment, however, the plaintiff conceded that swine flu had ultimately been determined to be a minor ailment akin to the flu. Id. Nevertheless, the plaintiff argued that, under the ADA, the court should consider how serious swing flu was perceived to be at the time the plaintiff was fired. Id. The court rejected that argument, reasoning that "[t]he question turns not on perception, but on reality." Id.

Nothing in the ADA or the EEOC's regulations contemplates the hindsight-oriented analysis sanctioned by the court in Valdez. Moreover, the Court fails to see why the viability of an employee's "regarded as" claim should turn on subsequent scientific developments or revised

15

medical opinions about an employee's prognosis. Therefore, the Court declines to adopt or apply the Valdez court's reasoning here.

In short, where the only objective evidence before an employer indicated that a perceived impairment was not transitory, the focus should be on that evidence, not contrary evidence about the impairment that the employer discovers months after the adverse action.[10] Here, a jury could reasonably conclude that, at the time of plaintiff's alleged termination, the objective evidence presented to defendant indicated that plaintiff's perceived impairment was expected to last more than six months because Dr. Nandakumar told plaintiff that she could not drive for a year. Accordingly, defendant has not established that plaintiff's perceived impairment was transitory.

Even if defendant's construction of "objectively" under 29 C.F.R. § 1630.15(f) was correct, defendant has not demonstrated that the objective evidence showed that plaintiff's perceived impairment was expected to last six months or less. First, viewing the evidence in light most favorable to plaintiff, plaintiff suffered from a non-specific neurological issue that required her to, at a minimum, refrain from driving for six months. (Def.'s 56.1 ¶ 18; Stern Dep. 105:6-12.) Although plaintiff's perceived impairment could have conceivably resolved itself within six months, defendant has not, for purposes of summary judgment, presented undisputed evidence that it was expected to do so. Second, it is unclear whether Dr. Singh based his advice to follow Dr. Nandakumar's instructions on New York law. This is significant because Dr. Singh's recommendation is arguably objective evidence that plaintiff's perceived impairment was expected to last at least a year.

---

[10] This is not a case where the objective evidence presented to the employer was silent as to whether the perceived impairment was transitory. This is also not a case where, at the time of the adverse action, there was conflicting objective evidence before the employer about the transitory nature of the perceived impairment. Accordingly, the Court has no reason to address how the transitory and minor defense should be analyzed in such circumstances.

16

For the foregoing reasons, defendant has not established that plaintiff's perceived impairment was transitory. Defendant's motion for summary judgment on its transitory and minor defense is therefore denied. In light of that conclusion, the Court does not reach whether plaintiff's perceived impairment was minor. See 29 C.F.R. § 1630.15(f) (noting that, to establish a transitory and minor defense, "a[n] [employer] must demonstrate that the impairment is both 'transitory and minor'").

## C. Plaintiff's NYSHRL Claim

Defendant argues that it is entitled to summary judgment on plaintiff's NYSHRL claim because: (1) the NYSHRL does not have a cognate "regarded as" provision; and (2) even if it did, plaintiff's claim would fail under that theory for the same reasons her claim under the ADA fails.

As plaintiff correctly points out, the NYSHRL's definition of disability includes "a condition regarded by other as [a qualifying] impairment." N.Y. Exec. Law § 292(21). Moreover, defendant has not pointed to any authority recognizing a state law analog to the ADA's transitory and minor defense. For these reasons, the Court denies defendant's motion for summary judgment on plaintiff's NYSHRL claim.

## D. Plaintiff's Motion to Amend the Complaint

Plaintiff requests that the Court deem her complaint amended to include the allegations set forth in her opposition if the Court determines that summary judgment is appropriate. This request, which was made in a footnote, is not properly before the Court. Even if it were, the Court would not address the request because the Court finds that summary judgment is not warranted based on the record before it.

## IV. CONCLUSION

For the reasons set forth above, the Court denies defendant's motion for summary judgment.

**SO ORDERED.**

Dated: September 30, 2015
　　　　Central Islip, New York

　　　　　　/s/ JMA　　　　　　　　
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE
